IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RONNIE S. SMITH, | |
| Petitioner, | **8:21CV230** |
| vs. | |
| BARBARA LEWIEN, | **MEMORANDUM AND ORDER** |
| Respondent. | |

This matter is before the Court on the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by Ronnie S. Smith ("Smith"), an inmate at the Omaha Correctional Center (OCC). Filing No. 1. As more specifically described in the Court's order on initial review, Smith claims his state court conviction and sentence must be set aside because he was denied a fair trial, his trial and appellate counsel were ineffective, and the evidence was not sufficient to support his conviction and sentence. Filing No. 7. Respondent Barbara Lewien, the Omaha Correctional Center warden, ("Respondent"), seeks dismissal of Smith's petition with prejudice. For the reasons stated below, Smith's petition is denied, and this case is dismissed with prejudice.

## I. BACKGROUND

**A. Facts**[1]

From October 7 to November 30, 2016, Smith drew checks on a bank account belonging to Ed Erdman (Ed), who lived with his son, Lance Erdman (Lance). The Erdmans and Smith were neighbors. Prior to 2014, Lance was an authorized co-signer

---

[1] The facts are not in dispute. The Court's recitation of the facts is primarily drawn from Smith's petition, Filing No. 1, his supporting brief, Filing No. 19, and the Nebraska Court of Appeals opinion in *State v. Smith*, No. A-18-461, 2019 WL 1749206, at *1 (Neb. Ct. App. Apr. 16, 2019).

on Ed's checking account, and the names of both Ed and Lance were printed on the check blanks. In 2014, Lance's name was removed from Ed's account. Ed's ex-wife, Sharon Johnson, was then added to the account so she could pay Ed's bills if something happened to him.

On October 8, 2016, Lance became ill and was transported to the hospital. Smith testified that before the rescue squad removed Lance from his home, Lance told Smith to look after Ed.

After arriving at the hospital, Lance's condition deteriorated. He was ultimately intubated later in the day of October 8, 2016. From that time until his death on October 27, 2016, Lance was unable to speak or write.

After Lance's death, Sharon Johnson began reviewing financial documents for both Ed and Lance. On November 10 or 11, 2016, Ms. Johnson noticed three checks which had been written on Ed's account that were purportedly signed by Lance on October 15 and 17, 2016. She also discovered a check drawn on Lance's account and purportedly signed by Lance on November 2, 2016—after Lance's death. At trial, Smith admitted he signed these checks but claimed he used the funds to care for Ed and to pay Ed's bills. At trial, the prosecutor presented evidence refuting this claim. Smith admitted that some of Lance's funds were used for Smith's personal benefit, but Smith rationalized that since he personally had nothing and was taking care of Ed, the charged items were a nice gift for himself.

Law enforcement received notice of the four checks signed by Smith using Lance's name. In March of 2017, Smith was charged with second degree forgery ($5,000 or more) in the County Court of Lancaster County, Nebraska. He was bound over to the district

court on that charge. An Amended Information was later filed, alleging Smith was a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016).

Trial began on March 8, 2018. On March 15, 2018, the jury found Smith guilty of second-degree forgery as to the four checks discovered by Ms. Johnson and written on Ed's and Lance's bank accounts. The jury found the aggregate amount of these forged checks exceeded $5000. On April 16, 2018, the district court found Smith was a habitual criminal and sentenced him to a mandatory minimum of 10 years but not more than 15 years in prison, with credit for 32 days of time served.

**B. Postconviction Procedural History**

Smith obtained new counsel for his direct appeal. His appellate counsel argued the conviction must be reversed because: 1) there was a material variance between the evidence presented and the crime charged; 2) the evidence did not support a $5000 aggregate loss computation as required for the crime of second degree forgery; 3) the trial court erred in admitting testimony regarding Smith's use of Lance's credit card; and 4) Smith was denied effective assistance of counsel because his trial attorney did not move for dismissal based on the alleged material variance between the charge and the evidence, and he failed to call witnesses as requested by Smith, cross-examine Ed Erdman about a rent check, or pursue the alternative criminal charge of attempted second degree forgery. Filing No. 13-5 at 4–5. The court rejected each of these arguments and affirmed the conviction and sentence. Filing No. 13-3.

Smith sought further review from the Nebraska Supreme Court, Filing No. 13-9, which was denied on August 23, 2019, Filing No. 13-1 at 4.

3

On March 10, 2020, Smith filed an Application for Post-Conviction Relief and Motion to Vacate Conviction in the District Court of Lancaster County, Nebraska. Filing No. 13-14 at 9–21. Smith claimed his conviction and sentence was void or voidable because:

| | |
|---|---|
| Claims I and II: | There was insufficient evidence to convict the defendant of the crime charged or that Smith was a habitual criminal; |
| Claim III: | Smith was denied and deprived of his right to a meaningful direct appeal because he was not allowed to argue that: (1) the amended information was defective; (2) he was denied defense witnesses; (3) he was not allowed to raise or show other trial court errors that were prejudicial in nature; (4) he was not allowed to argue that trial counsel failed to object, file other defense motions, entered into a stipulation that shifted the burden of proof, and failed to investigate; |
| Claim IV: | Smith's trial counsel was ineffective for failing to: (1) investigate; (2) consult with the defendant prior to entering into a stipulation with the prosecution; (3) summon or depose defense witnesses; (4) object; (5) tender a defense instruction for the jury; and (6) protect the defendant's interest during the prosecution; and |
| Claim V: | Smith's appellate counsel was ineffective for failing to: (1) research, brief, and argue issues appearing on the record; and (2) effectively present and argue issues he elected to raise. |

The Lancaster County District Court held that Claims I through IV were raised on direct appeal and were therefore procedurally barred. Filing No. 13-14 at 65. "[P]ostconviction relief is available only to remedy prejudicial constitutional violations and cannot be used to secure review of issues which were or could have been litigated on direct appeal." Id. at 66. Since Claims I through IV "were either raised on direct appeal or could have been," they were procedurally barred. Id. at 68.

As to Smith's claim of ineffective appellate counsel (Claim V), the Lancaster County District Court applied Strickland v. Washington, 466 U.S. 668 (1984), and denied the claim on the merits. The court held the claim of ineffective assistance of appellate counsel was not raised with sufficient particularity to afford relief, and the representation provided by Smith's trial and appellate counsel was equal to that of a lawyer with ordinary training and skill in the area of criminal law. Filing No. 13-14 at 68–72.

Smith timely appealed the denial of his petition for post-conviction relief. Filing No. 13-10. Smith claimed the district court erred by denying his motion without an evidentiary hearing, not allowing him to respond to the court's order finding certain claims procedurally barred, and failing to appoint postconviction counsel. The appeal was denied on April 6, 2021. State v. Smith, No. A-20-534, 2021 WL 1259723, at *1 (Neb. Ct. App. Apr. 6, 2021); Filing No. 13-4. Smith's request for further review by the Nebraska Supreme Court, Filing No. 13-12, was denied on May 28, 2021, Filing No. 13-2 at 4.

On June 17, 2021, Smith filed his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254(a), Filing No. 1, raising the following claims:

Claim I: Petitioner was denied his right to a fair trial because his conviction was obtained due to a prejudicial stipulation and failure to prove all the elements of forgery.

Claim II: Petitioner was denied his right to a fair trial because his conviction was obtained by a biased jury that received perjured testimony, false evidence, and defective instructions where the jury was not instructed that an element of forgery was the unauthorized use of another's name.

Claim III: Petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment because trial counsel (1) failed to investigate and gather evidence to show Petitioner was not guilty; (2) failed to consult with Petitioner prior to entering into a stipulation with the prosecution; (3) failed to summon or depose defense witnesses; (4) failed to object; (5)

5

|  |  |
|---|---|
|  | failed to tender a defense instruction for the jury; (6) failed to protect Petitioner's interest during the prosecution; (7) failed to file any pretrial motions regarding the amended information and failed to investigate the factual basis of the amended information; and (8) failed to present evidence that the amount charged was incorrect and that the money was used for Lance Erdman's interest. |
| Claim IV: | Petitioner was denied his rights to perfect a meaningful direct appeal and to the effective assistance of counsel in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Sixth Amendment because: (1) appellate counsel failed to effectively present and argue those issues he elected to raise and failed to research, brief, and argue the following issues appearing on the record; (2) the amended information was defective; (3) Petitioner was denied defense witnesses; (4) other trial court errors that prejudiced the defense; and (5) trial counsel's (a) failure to object and tender a defense jury instruction, (b) failure to file other defense motions, (c) failure to investigate, and (d) entrance into a stipulation that shifted the individuals named on the check to represent his interest when signing the financial instrument and Petitioner did not write, sign, or represent Edward Erdman's signature on any financial instrument. |
| Claim V: | Petitioner was denied his rights to due process and a fair trial as his conviction is not supported by any evidence because Petitioner was authorized by one of the individuals named on the check to represent his interest when signing the financial instrument and Petitioner did not write, sign, or represent Edward Erdman's signature on any financial instrument. |

Filing No. 7 at 1–3.

Respondent has filed the state court record, Filing No. 13, and the parties have briefed the issues. Upon review of the filings of record, an evidentiary hearing is not warranted. Smith's habeas claims are therefore fully submitted.

6

## II.  DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 2254(b)(1), when a state court provides an effective and available corrective process, a federal court may not grant habeas relief if the petitioner failed to "exhaust[] the remedies available in the courts of the State."  State courts are entitled to "one full opportunity to resolve any constitutional issues"; thus, a petitioner must "invoke one complete round of the State's established appellate review process before [the petitioner] present[s] those issues in an application for habeas relief in federal court." Welch v. Lund, 616 F.3d 756, 758 (8th Cir. 2010) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).  "A [petitioner] is not required to pursue 'extraordinary' remedies outside of the standard review process, but he 'must seek the discretionary review of the state supreme court when that review is part of the ordinary and established appellate review process in that state.'" Id. (quoting Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001)).  A failure to exhaust available state court remedies properly within the allotted time "results in procedural default of the [petitioner's] claims." Id.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104–132, 110 Stat. 1214 (1996), "sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was 'adjudicated on the merits in State court proceedings.'" Johnson v. Williams, 568 U.S. 289, 298 (2013) (quoting 28 U.S.C. § 2254(d)); accord Burt v. Titlow, 571 U.S. 12, 15–16 (2013) ("Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.").  Federal courts conduct

7

"only a limited and deferential review of underlying state court decisions" giving deference to "decision[s] by a state court 'with respect to any claim that was adjudicated on the merits in State court proceedings.'" *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (quoting *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007)).

A habeas petitioner is precluded from habeas relief on issues previously decided by the state court unless the state decision contravenes federal law or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). As to issues of fact, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). As to issues of federal law, habeas relief is denied unless the state decision is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The phrase "clearly established Federal law" as used in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's application of the Supreme Court's clearly established precedent is "unreasonable" if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S.

8

at 413. An unreasonable application of the Supreme Court's "holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)); *accord Williams*, 529 U.S. at 411 ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."). This standard is—as Congress intended—"difficult to meet." *Sexton v. Beaudreaux*, 585 U.S. ___, ___, 138 S. Ct. 2555, 2558 (2018) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). It demands the Court give the decision of Nebraska's appellate court "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). The Court "will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy." *Burt*, 571 U.S. at 20 (alteration in original) (quoting *Harrington*, 562 U.S. at 102).

**B. Smith's Federal Habeas Claims**

    1. Claim I

In Claim I, Smith alleges he was denied his right to a fair trial because his conviction was based on a prejudicial stipulation, the government failed to prove all the elements of second-degree forgery, and he was unlawfully sentenced as a habitual criminal.

Smith's federal habeas briefing states the prosecutor and his defense counsel stipulated that Smith did in fact sign Lance Erdman's name to checks drawn on Ed

Erdman's account. Filing No. 1 at 23. Smith claims this stipulation shifted the government's burden of proof to the defendant. *Id.* at 10.

The stipulation issue was not raised on direct appeal, and while it is raised in the petition for postconviction relief, the description of the stipulation in the state postconviction petition differs from the description in Smith's federal habeas brief. *See* Filing No. 13-10 at 18, 24. Smith claims his failure to raise the stipulation on direct appeal must be excused because he neither knew nor could have known about the stipulation until after his direct appeal. Even if the Court assumes that is true, the stipulation described in Smith's federal habeas brief—that Smith signed Lance's name to the four checks drawn on Ed's account—cannot be considered prejudicial because Smith admitted those same facts during his trial testimony.

Smith's claim regarding an alleged prejudicial stipulation is procedurally barred and he has failed to show cause or prejudice to excuse this bar. Even if the stipulation issue is not procedurally barred, Smith has not clearly explained the content of the stipulation, and this Court found no record of a stipulation corresponding to the description in either Smith's state or federal postconviction filings. Smith's claim regarding a trial stipulation, including any claims of ineffective assistance of counsel related to the alleged stipulation, must be denied.

Smith claims the distinction between the evidence (that he signed checks on Ed's bank account using Lance's name) and the charge (checks were wrongfully "drawn on the account belonging to Ed Erdman with US Bank"), Filing No. 13-13 at 36, was a material variance warranting dismissal of the case. He also argues the jury's finding that the aggregate amount of the forgery exceeded $5000.00, an element of a second-degree

forgery case, was not supported by the trial evidence because the check proceeds were used for the benefit of Lance or Ed.  These claims were thoroughly discussed and rejected on direct appeal based on the facts of record and Nebraska law.  This Court will not revisit that state court decision.

Smith challenges the criminal history used as a basis for sentencing him as a habitual criminal.  This argument was known or could have been known when Smith filed his direct appeal, but it was not raised at that time.  Smith is therefore procedurally barred from raising it now.

2. Claim II

Smith claims his conviction must be reversed due to jury bias, false and perjured evidence, and defective jury instructions.  These arguments were not raised on direct appeal (or in state postconviction proceedings) and are procedurally defaulted.

3. Claim III: Ineffective Assistance of Trial Counsel

Smith has raised a plethora of allegations of purported ineffective assistance of trial counsel, but as explained below, all of these claims will be denied.

a. Failure to summon or depose witnesses

Smith claims his trial counsel was ineffective because he failed to call witnesses who would testify that Smith and Lance Erdman were friends, Smith visited Lance in the hospital daily, Smith helped Lance, and immediately before being transported to the hospital, Lance told Smith to take care of Ed.  This argument was raised on direct appeal, Filing No. 13-5 at 32; in Smith's petition seeking postconviction review, Filing No. 13-14

at 12, 14, 18, and on postconviction appeal, Filing No. 13-10 at 23. The claim is not subject to procedural default.[2] Respondent argues it must be denied on the merits.

On direct appeal, the Nebraska Court of Appeals rejected Smith's claim of ineffective assistance of trial counsel for failing to call Smith's requested witnesses. The Court held:

> Testimony from other witnesses about a positive relationship between Lance and Smith, or how Smith visited the hospital every day, or the things Smith did for Lance, would have been cumulative to Smith's own testimony regarding the same. Further, such evidence is irrelevant to whether Smith had authority to write checks on Ed's account. . . . [T]estimony from emergency medical technicians who allegedly overheard Lance's statement to Smith that Smith should take care of Ed is likewise cumulative to Smith's own testimony, and again, is irrelevant to whether Smith had authority to write checks on Ed's account. Asking a person to take care of a parent does not equate with granting authority to write checks on the requesting party's bank account, much less on an account over which the requesting party has no authority. Thus, Smith could not be prejudiced by trial counsel not calling these particular witnesses.

*State v. Smith*, 2019 WL 1749206, at *12; Filing No. 13-3 at 15.

The state appellate court applied state law to the facts of record, and its ruling is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). The state court's ruling is fully supported by the facts of record: Smith testified at the trial that he helped Lance and Ed, visited Lance in the hospital, and that prior to being transported to the hospital, Lance told Smith to take care of Ed. Filing No. 13-22 at 11–13, 20–23, 37–40, 54. Moreover, Smith's testimony was corroborated by witnesses who testified during the government's case in chief, Filing No. 13-20 at 33, 38, 55, 67–69, 171–72, 186, including testimony that Lance referred to Smith as his best friend, *Id.* at 62, and the family reached out to Smith when considering honorary pallbearers for Lance's funeral, *Id.* at 88–89.

---

[2] Respondent acknowledges that this claim is not procedurally barred. Filing No. 15 at 21.

12

Further trial testimony to explain the relationship and interactions between Smith and Lance would have been cumulative and unnecessary, particularly given its marginal relevance to the issues in this case. Smith's trial counsel was not ineffective in failing to call Smith's requested additional witnesses.

b. Failure to present evidence regarding amount charged and use of funds

Smith asserts his trial counsel was ineffective because he failed to present evidence challenging the $5000 charged amount and that the money from the forged checks was used for Lance Erdman's interest. On direct appeal, Smith's appellate counsel argued that the monetary amount related to the forgery could not be calculated solely from the face value of the checks; that after subtracting amounts used for the benefit of Ed and Lance, the total amount taken as a result of the forgery was actually far less than $5000. Filing No. 13-5 at 25–27. After interpreting Nebraska law in the context of the facts presented, the Nebraska Court of Appeals rejected that claim, holding the cumulative face value of the forged checks determined the amount of the forgery irrespective of how the proceeds were used. *State v. Smith*, 2019 WL 1749206, at *10; Filing No. 13-3 at 12–13.

Trial counsel cannot be found ineffective for failing to pursue an argument before the trial court that was ultimately rejected by the appellate court.[3] Moreover, when filing his direct appeal, Smith asserted claims of ineffective assistance of trial counsel, but he did not claim his trial counsel was ineffective based on a failure to challenge the amount

---

[3] Smith's appellate counsel was able to present the claim on appeal because, contrary to Smith's habeas claim, his trial counsel did present evidence to prove monetary proceeds from checks Smith signed using Lance's name were used for the benefit of Lance and Ed. And referencing that evidence during his closing statement, Smith's trial counsel did argue that the jury must decide how much Smith received, if anything, by forging instruments with an intent to deceive. *See, e.g.*, Filing No. 13-22 at 50–54; Filing No. 13-24 at 54–57, 61–63.

13

charged or to show who actually benefitted from the forged instruments. Smith is therefore procedurally barred from seeking habeas relief based on this claim.

c. Remaining ineffective assistance claims

In addition to the foregoing claims, Smith alleges he was denied effective assistance of trial counsel because counsel entered into a prejudicial stipulation—a claim this Court addressed and rejected on both procedural and substantive grounds in its discussion on Claim I. Smith further claims his trial counsel failed to investigate and gather evidence to show Smith was not guilty; object; tender a defense instruction for the jury; protect his interests during the prosecution; investigate the facts underlying the amended information; and file pretrial motions. These conclusory statements lack the specificity needed to evaluate their merits, and even assuming they sufficiently state a claim, Smith knew or had reason to know the basis for these claims when he filed his direct appeal, he did not raise them, and they are procedurally barred.

In summary, Smith's habeas claims alleging ineffective assistance of trial counsel as set forth in Claim III are denied.

4. Claim IV: Ineffective Assistance of Appellate Counsel

Smith alleges his appellate counsel was ineffective because he failed to adequately present and argue the issues he elected to raise. Smith claims appellate counsel failed to research, brief, and argue that the amended information was defective, and that Smith was denied defense witnesses. As to the alleged defective information and denial of witnesses, both claims were raised on direct appeal and Smith has not explained what arguments were overlooked by appellate counsel that could have changed the outcome of that appellate ruling. Smith also claims his appellate counsel

failed to appeal other trial errors which prejudiced the defense. Smith's conclusory allegations fail to adequately raise a claim for habeas relief.

Smith further argues his appellate counsel was ineffective because he failed to adequately raise claims of ineffective assistance of trial counsel on direct appeal. Smith claims his appellate counsel failed to allege that Smith's trial counsel entered into a prejudicial stipulation and did not seek dismissal due to a material variance. As to the stipulation, this Court has concluded, on the merits, that the content of the stipulation is not adequately alleged, does not appear in the record, and as described in the federal briefing, was not prejudicial. Smith's appellate counsel cannot be faulted for failing to raise a claim of ineffective trial counsel based on accepting a stipulation, the content of which is vague and the description of which is nonprejudicial. Likewise, the Nebraska Court of Appeals considered and rejected any argument for dismissal based on whether Smith falsely signed as Lance or as Ed when he signed the checks at issue. *State v. Smith*, 2019 WL 1749206, at *8–*10; Filing No. 13-3 at 10–12. Since the claim itself lacks merit, trial counsel was not ineffective for failing to assert it, and appellate counsel was not ineffective because he did not raise this claim of ineffective assistance of trial counsel on direct appeal.

Smith also claims his appellate counsel failed to raise ineffective assistance claims based on trial counsel's failure to properly object, tender a defense jury instruction, file other defense motions, or investigate the case. These conclusory allegations were raised in Smith's state petition seeking post-conviction relief and on appeal of the order denying that petition. Like the state court, this Court finds these allegations of ineffective

assistance of appellate counsel lack sufficient specificity to raise a claim for habeas review.

5. Claim V: Insufficient Evidence

Smith asserts the evidence was insufficient to support his conviction because he was authorized by Lance, whose name was on the check blanks, to represent Lance's interest when signing the financial instrument. The Nebraska Court of Appeals extensively analyzed the facts of record, and it rejected Smith's claim of insufficient evidence. The Court found that Smith admitted he wrote four checks and signed Lance's name to them, thereby transforming incomplete checks into complete ones by purportedly signing Lance's name as maker. It further explained that based on the trial evidence, Smith knew he could not sign his name on the check paid to the order of the credit union, so he signed Lance's name, and as to the check blanks imprinted with both Lance's and Ed's names, a signature card addendum had removed Lance as an account owner before the checks were written. The Court therefore held that the evidence supported the jury's finding that Smith completed the checks without the authority of anyone entitled to grant such authority, and those falsely completed checks were forged instruments. Moreover, by presenting the four checks totaling over $5000 to the bank for payment from Ed's account, Smith's forgery affected Ed's interest in his bank account in an amount exceeding $5000. Filing No. 13-3 at 10–13.

The Nebraska Court of Appeals' ruling is fully supported by the facts of record, and it applied Nebraska, not federal, law when interpreting the import of those facts to the crime charged. This Court has no authority to reconsider that state ruling on Smith's petition for federal habeas relief.

16

**C. No Certificate of Appealability**

"[A] state prisoner seeking a writ of habeas corpus" under § 2254 cannot appeal the denial of his petition without first obtaining a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253); Fed. R. App. P. 22(b). This Court cannot grant such a certificate unless Smith "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do that, Smith "must demonstrate that reasonable jurists would find [this] [C]ourt's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Smith has not made that showing, and this Court will not issue a certificate of appealability.

Accordingly,

IT IS ORDERED:

1. Petitioner Ronnie S. Smith's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, Filing No. 1, is denied.

2. This case is dismissed with prejudice.

3. No certificate of appealability will issue.

4. A separate judgment will be entered in this case.

Dated this 1st day of June, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge